496 F.Supp. 211 (1980)
WHALEN & SONS GRAIN COMPANY, a Corporation, Plaintiff,
v.
MISSOURI DELTA BANK, a Corporation, Defendant.
No. S80-0022C.
United States District Court, E. D. Missouri, Southeastern Division.
August 28, 1980.
*212 James E. Reeves, Ward & Reeves, Caruthersville, Mo., for plaintiff.
Stephen N. Limbaugh, Limbaugh, Limbaugh & Russell, Cape Girardeau, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff brought this suit pursuant to 28 U.S.C. § 1332 seeking to hold defendant accountable for payment of certain checks which defendant dishonored due to insufficient funds in the drawer's account.
This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties and being otherwise fully advised in the premises hereby makes the following findings of fact and conclusions of law, as required by Rule 52, Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in that state.
2. Defendant is a banking corporation organized and existing under the laws of the State of Missouri, with its principal place of business in Hayti, Missouri.
3. Plaintiff is in the business of buying and selling grain. In the course of its business, plaintiff sold corn to Roger Davidson and Carl Hagar, doing business as Bootheel Express Lumber and Grain ("Bootheel Express"). Davidson and Hagar maintain a demand checking account with defendant under this name. Both Davidson and Hagar are authorized to write checks on this account.
4. Prior to dealing with Bootheel Express for the first time, in the fall of 1978, plaintiff contacted defendant to inquire as to Bootheel Express' credit rating. Plaintiff did not contact defendant again concerning Bootheel Express until after the sales of corn involved in this lawsuit were completed.
5. During the last few weeks of December 1979, Bootheel Express made numerous purchases of corn from plaintiff, paying with checks drawn on defendant. A total of nineteen checks are involved in this litigation.
6. All nineteen checks were deposited by plaintiff in its checking account at the Wemple State Bank in Waverly, Illinois, and immediate credit given therefor. The checks were subsequently forwarded through the normal and regular banking channels to defendant for presentment and payment. The checks were sent via the Federal Reserve System, and, more particularly, the Federal Reserve Bank in St. Louis, Missouri.
7. Defendant received the checks from the St. Louis Federal Reserve Bank via cash letters. The letters were received at the start of business of the banking day. Upon receipt of the checks, a preliminary examination was conducted, checking for proper signatures and endorsements. The checks were then sent to a computer center in Sikeston, Missouri, for posting. Posting was accomplished the night of the initial receipt by defendant.
8. The morning following posting, defendant was notified by the computer center of checks which were unpostable. *213 Among the unpostable items were the nineteen checks involved in this litigation, due to insufficient funds in the Bootheel Express account. Upon receipt of the unpostable items, defendant's head bookkeeper would prepare the items for return to the Federal Reserve Bank in St. Louis. After filling out the appropriate forms, the checks and the forms would be placed in a pread-dressed, postage-paid envelope for mailing to St. Louis. This envelope would be placed in the mailroom of defendant. Each day, between approximately 4:00 p. m. to 4:30 p. m., the defendant's custodian would pick up all the mail in the mailroom and take it to the Hayti Post Office. This routine is followed each business day, and was followed each business day in December 1979 and January 1980.
9. Plaintiff was first notified on December 24, 1979 that the Bootheel Express checks were returned to the Federal Reserve in St. Louis due to insufficient funds. On that date Davidson informed plaintiff of the problem. Davidson requested that the checks be presented to defendant a second time. Plaintiff agreed to do so. All nineteen checks were subsequently presented a second time, and all nineteen were again returned due to insufficient funds.
10. Insufficient funds checks drawn on the Bootheel Express account were presented to defendant for payment almost daily in December 1979. Defendant contacted Davidson and Hagar frequently to request the deposit of additional funds.
11. The dates and amounts of the checks, the dates of receipt by defendant, and the dates the checks were received in return by the Federal Reserve in St. Louis are as follows:

 Date rec'd
Check Date rec'd by Federal
Number Amount Date by deft.[*] Reserve
 1 $2,302.29 12-14-79 12-21-79 12-28-79
 2 2,502.64 12-14-79 12-21-79 12-28-79
 3 2,488.44 12-18-79 12-21-79 12-28-79
 4 2,635.25 12-17-79 12-21-79 12-28-79
 5 1,869.49 12-12-79 12-21-79 12-28-79
 6 1,878.53 12-18-79 12-26-79 1- 2-80
 7 2,290.61 12-19-79 12-26-79 1- 2-80
 8 2,393.56 12-19-79 12-26-79 1- 2-80
 9 2,236.34 12-22-79 12-28-79 1- 3-80
10 2,326.70 12-22-79 12-28-79 1- 3-80
11 2,120.68 12-21-79 12-28-79 1- 3-80
12 2,129.73 12-22-79 12-28-79 1- 3-80
13 2,440.55 12-21-79 12-28-79 1- 3-80
14 2,244.00 12-27-79 1- 3-80 1- 7-80
15 2,630.64 12-27-79 1- 3-80 1- 7-80
16 2,485.34 12-27-79 1- 3-80 1- 7-80
17 2,470.77 12-28-79 1- 3-80 1- 7-80
18 2,262.00 12-27-79 1- 3-80 1- 7-80
19 2,344.62 12-28-79 1- 3-80 1- 7-80

Plaintiff is not seeking to recover due to the alleged failure to timely return the checks upon the second presentment, so there is no need to detail those dates.
12. The checks in question were mailed back to the Federal Reserve in St. Louis on the day following the day of receipt, excluding weekends and holidays. No wire notification was given to the Federal Reserve, or anyone else, on any of the checks. The checks involved in this litigation were handled by defendant the same as all *214 checks. There is absolutely no evidence of bad faith on the part of defendant.
13. Letters mailed from Hayti to St. Louis by the Bank of Hayti on December 24, 27, and 31, 1979 and January 4, 1980 were received in St. Louis by the Federal Reserve Bank on January 2, 2, 4 and 7, 1980, respectively.
14. Since the filing of this lawsuit, plaintiff has received two thousand dollars ($2,000.00) for payment on check number 15.

CONCLUSIONS OF LAW
This Court has jurisdiction of this cause of action pursuant to 28 U.S.C. § 1332, the parties being residents of different states and the amount in controversy exceeding ten thousand dollars ($10,000.00). This Court sitting via diversity, the law of the forum should be applied. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
Missouri has adopted the Uniform Commercial Code. Section 400.4-302, R.S.Mo. (1969)[1], says, in substance, that a payor bank is accountable for a demand item which has been presented to it, whether properly payable or not, if it does not pay the item, return the item or send notice of dishonor prior to its midnight deadline. A payor bank is strictly liable under this section if it fails to comply. Central Bank and Trust Company v. First Northwest Bank, 332 F.Supp. 1166 (E.D.Mo.1971), aff'd 458 F.2d 511 (8th Cir. 1972). Rock Island Auction Sales v. Empire Packing Co., 32 Ill.2d 269, 204 N.E.2d 721 (1955). Under the circumstances of this case, defendant is the "payor" bank. § 400.4-105(b). The "midnight deadline", as relevant to this case, is midnight of the next banking day following the banking day on which defendant received the items in question. § 400.4-104(h). Weekends and holidays are not considered "banking days" since defendant is not open to the public to carry on substantially all of its banking functions on those days. § 400.4-104(c).
Plaintiff argues that it can be presumed defendant did not return the items prior to its midnight deadline since the items were not received in return by the Federal Reserve in St. Louis until well after the normal mailing times had expired. Such a presumption is unwarranted in this case. Plaintiff has not shown that defendant's normal routine was not followed in this case, and that routine, if followed, ensures that the items are returned well before the midnight deadline. Cf. Leasing Associates, Inc. v. Slaughter & Son, Inc., 450 F.2d 174 (8th Cir. 1971). Furthermore, the delay in receipt by the Federal Reserve in St. Louis is not supportive of plaintiff's position. Defendant has shown that other items mailed from Hayti to St. Louis were received in St. Louis either on the same date or later than the checks in question. This Court has therefore concluded that defendant met its midnight deadline.[2] Defendant can not, therefore, be held accountable under § 400.4-302, R.S.Mo. (1969).
Plaintiff alternatively argues that defendant should be held liable due to its failure to exercise ordinary care in the handling of the items. The first prong of this argument is that defendant should have notified plaintiff of the status of Bootheel Express' account since defendant was aware that plaintiff was accepting numerous checks from Bootheel Express. This Court can find no such requirement under the law. Defendant met its obligations under the law by returning the items prior to its midnight deadline. § 400.4-103(4) states that action or non-action in compliance *215 with Article 4 prima facie constitutes the exercise of ordinary care.
Finally, plaintiff argues that defendant failed to exercise ordinary care in that it failed to give wire notice to the Federal Reserve of the return of the checks. Paragraph 18c of Federal Reserve Bank of St. Louis Operating Letter 9A requires wire notice of return of all items over twenty-five hundred dollars ($2500.00). Failure to comply with this operating letter constitutes the failure to exercise ordinary care. Bank of Wyandotte v. Woodrow, 394 F.Supp. 550 (W.D.Mo.1975); Colorado National Bank v. First National Bank, 459 F.Supp. 1366 (W.D.Mich.1978). Defendant admits that it failed to exercise ordinary care as to the three items over twenty-five hundred dollars ($2500.00).[3]
The measure of damages for a bank's failure to exercise ordinary care is set out in § 400.4-103(5):
(5) The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.
Under this section, if the item would have been uncollectible by plaintiff even had defendant exercised ordinary care, defendant can not be said to have caused plaintiff's damages. Marcoux v. Van Wyk, 572 F.2d 651 (8th Cir. 1978), cert. denied 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1979). To recover, plaintiff must show at least a reasonable chance of collection. Id. Plaintiff has not done so in this case. Absolutely no evidence was introduced to indicate how the failure to wire notice in any way harmed plaintiff's chances of collection. The uncollectibility of the items was caused by Bootheel Express' problems, not the bank's actions. Cf. Marcoux, supra at 656.
The prospect of recovery due to a bank's failure to exercise ordinary care is somewhat illusory under this standard, but that is the result desired by the Code's drafters. The bank is not to be held liable for customers' debts unless there is a clear causal relation between the bank's actions and the plaintiff's loss. Id.
Plaintiff argues that, had defendant given immediate notice of the return of the initial checks, subsequent sales would not have been made to Bootheel Express. Such a claim is factually doubtful. In any event, this is a claim for consequential damages. Marcoux v. Mid-States Livestock, Inc., 429 F.Supp. 155, 161 (N.D.Iowa 1977), aff'd 572 F.2d 651 (8th Cir. 1978), cert. denied 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1979); Wilhelm Foods, Inc. v. National Bank of No. Amer., 388 F.Supp. 1376 (S.D.N.Y.1974). Such damages are recoverable only on a showing of bad faith. § 400.4-103(5). There is absolutely no such showing in this case.
Judgment will therefore be entered in defendant's favor.
NOTES
[1] December 22, 23, 29 and 30, 1979 and January 5 and 6, 1980 were weekends. December 25, 1979 and January 1, 1980 were holidays.
[2] This Court does not understand plaintiff to be claiming that defendant should be held liable for its failure to meet the midnight deadline on the second presentment of the checks. Such a claim, in any event, is unavailing-there is no requirement to give notice or return the items prior to the midnight deadline once the items have been initially dishonored. § 400.3-511(4). Leaderbrand v. Central State Bank of Wichita, 202 Kan. 450, 450 P.2d 1 (1969); Goodman v. Norman Bank of Commerce, 551 P.2d 661 (Okl. App.1976).
[3] Plaintiff argues that the operating letter should apply to all the checks, since the aggregate amount returned each time was always in excess of twenty-five hundred dollars. There is no support in the Code or the operating letter for this construction. The operating letter specifically refers to the singular of the term "item".
[1] December 22, 23, 29 and 30, 1979 and January 5 and 6, 1980 were weekends. December 25, 1979 and January 1, 1980 were holidays.