BAR–RAM IRRIGATION PRODUCTS,
Plaintiff-Appellee,

v.

PHENIX–GIRARD BANK,
Defendant-Appellant,

Shalom Irrigation, Inc., et al.,
Defendants.

No. 85–7197.

United States Court of Appeals,
Eleventh Circuit.

Jan. 13, 1986.

L. Joel Collins, Phenix City, Ala., Ronald W. Wise De Ment & Wise, Montgomery, Ala., for defendant-appellant.

William Allen Smyly, Jr., Walter J. Sears, III, Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This diversity suit presents two questions: (1) whether the district court's finding that the appellant, Phenix-Girard Bank, is liable to the appellee, Bar-Ram Irrigation Products, for failing to secure the signature of the drawee on certain bank drafts is clearly erroneous; and (2) whether and on what basis damages should be assessed if the appellant is liable. We conclude that the trial judge was not clearly in error as to the issue of liability and, thus, we AFFIRM that part of the court's decision. Since our analysis of the damages question is hampered by incomplete findings, we VACATE the damages award of the district court and REMAND for further proceedings consistent with this opinion.

I

A number of parties are involved in the dispute that gives rise to this action. The appellant, Phenix-Girard, is a bank located in Phenix City, Alabama. The appellee, Bar-Ram Irrigation, is an Israeli corporation that designs, manufactures and sells irrigation systems internationally. Shalom Irrigation, Inc., is an Alabama corporation that distributes irrigation equipment. Shalom's principal officers are James Weatherford, Sr., and Thomas Smith. The Israel Foreign Trade Risks Insurance Corporation Ltd. (IFTRIC) is a government-sponsored Israeli insurer.

In November 1980, Shalom entered into an exclusive dealership agreement with Bar-Ram to distribute agricultural irrigation equipment manufactured by the latter in a six-state region in the southeastern United States. In 1981, Bar-Ram shipped some of this equipment to Shalom. Shalom could not pay for the equipment, as it intended, by letter of credit so Bar-Ram agreed to payment by draft through Phenix-Girard Bank. Bar-Ram sent title documents for the equipment to Phenix-Girard along with drafts drawn by Bar-Ram on Shalom. The title documents were to be released to Shalom on its acceptance of the drafts.

A collection letter accompanying these documents carried the following instructions to Phenix-Girard:

Please deliver documents to drawees against their acceptance of the attached draft for [amount] due on [date] which draft is to be guaranteed "BON POUR AVAL" by James Weatherford and Tom Smith jointly and severally for the above drawees. When advising us of the acceptance, please confirm that the draft has been duly guaranteed as instructed. [Brackets supplied.]

The collection letter clearly showed the name and address of Shalom under the rubric "drawee" at the top of the page. However, Phenix-Girard secured no signature for Shalom as drawee. It obtained only the signatures of Weatherford and Smith "Bon Pour AVAL"—that is, as individual guarantors—on the drafts themselves, and released the title documents to Shalom, which took possession of the irrigation equipment.

Phenix-Girard shortly thereafter cabled Bar-Ram with this message:

We deny any liability for collection of any amounts due. We refuse to accept receipt of any shipments or any liabilities as the consignee. We only guarantee signatures of James Weatherford and Tom Smith. Please reply.

Thereafter, Shalom refused to pay the drafts and the bank returned them, dishonored, to Bar-Ram. There is no indication in

the record that Shalom claimed that it need not pay because Phenix-Girard had obtained no valid acceptance of the drafts; rather, the refusal appears to have been based on unrelated grounds.

Bar-Ram had insured the Shalom drafts with IFTRIC for 80 percent of their total face amount of $167,527.71. When Shalom refused to pay the drafts, Bar-Ram sought to collect on its insurance. However, under the terms of the insurance contract, IFTRIC refused to cover the drafts without a valid acceptance by the drawee.

Bar-Ram went to court. In August 1982 it filed a complaint alleging breach of contract and breach of dealership against Shalom and breach of contract and negligence against Phenix-Girard. It also sued for payment on the drafts by the guarantors, Smith and Weatherford.

The lower court granted summary judgment against Shalom for the cost of the irrigation equipment and against Smith and Weatherford for individual liability on the bank drafts. These judgments are not at issue here. Bar-Ram's breach of contract and negligence claims against Phenix-Girard were tried without a jury. The trial judge found Phenix-Girard liable for mishandling the drafts and entered final judgment against the bank for $157,639.55, which was 80 percent of the face value of the drafts ($134,022.16)—the amount that would have been recoverable under the IFTRIC insurance policy—plus pre-judgment interest ($23,617.39). This judgment was appealed to this Court.

## II

The appellant, Phenix-Girard, urges this Court to reverse the district court not only on the merits of the liability issue but also on the ground that certain rulings by the trial judge—in granting a continuance at trial, in admitting an exhibit into evidence and in calculating damages and pre-judgment interest—were in error. We conclude that the district court was correct in finding Phenix-Girard liable on the drafts. We do not reach the other errors alleged, which are relevant chiefly to the calculation of damages, because we are not satisfied that the lower court has fully established the grounds for the award of any damages at all in this case.

■ We review the liability issue under the "clearly erroneous" standard. *Seaboard Coast Line R. Co. v. Trailor Train Co.*, 690 F.2d 1343, 1348–49 (11th Cir.1982). We conclude that the liability of Phenix-Girard bank for its failure to obtain a valid acceptance of the drafts is clear. The drafts were not signed by the drawee as required by Alabama law, which provides in Ala.Code § 7–3–410(1) (1975):

> Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone....
>
> No person is liable on an instrument unless his signature appears thereon.

■ Appellant's suggestion that it should be excused from its obligation to obtain the drawee's signature because no space was provided on the drafts for such a signature is unpersuasive. "Customarily, the signature [of the drawee] is written vertically across the face of the instrument." *Id.*, comment 4. Even a signature on the back of the instrument "is sufficient." *Id.* Further, the bank's argument that the plural form, "drawees," used in Bar-Ram's collection letter was misleading is insufficient to relieve the bank of its responsibility. The trial judge found that "the bank fully understood its obligations under the law to secure the signature of the drawee, before the drawee might be deemed to have accepted the draft." Indeed, the judge found that the bank's attempted disclaimer of liability "reflect[ed] a realization by Phenix-Girard that it had failed to secure and guarantee Shalom's valid acceptance of the drafts." These findings, based on trial testimony by bank officials, are not clearly erroneous.

■ Alabama law provides that an authorized representative who signs his name to an instrument is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity. Ala.Code § 7–3–403(2)(a) (1975); *Phenix-Girard Bank v. Cannon,* 414 So.2d 926, 927 (Ala.1982). A reasonable construction of this rule would find its corollary true as well: The signatures of Smith and Weatherford on the drafts may only obligate Shalom if the instruments name the person represented[1] or show that the principals signed in a representative capacity. No such designation appears on the face of the drafts. The trial judge found, again based on testimony by bank officials, that "the bank understood that the signature of a guarantor did not itself constitute the signature of a drawee." Indeed, Phenix-Girard took advantage of this very rule in an action to recover a debt against a corporate officer who failed to indicate that he signed a note for his corporation in a representative capacity. *See id.* at 927–28.

■ The bank improperly relies on *Kuhns v. Coussement,* 412 So.2d 779 (Ala. Civ.App.1981), as authority to support the introduction of parol evidence to establish whether Smith and Weatherford signed as representatives of Shalom. *Kuhns* construes Ala.Code § 7–3–403(2)(b), which concerns special arrangements among immediate parties as to obligation for instruments. *Id.* at 782. No such arrangement was alleged here, and the trial judge thus properly analyzed the question under Section 7–3–403(2)(a). Parol evidence is not admissible under Section 7–3–403(2)(a) if the instrument neither names the person represented nor shows that the representative signed in a representative capacity. *Phenix-Girard Bank, supra,* 414 So.2d at 928.

In sum, the trial judge's conclusion that Phenix-Girard negligently handled Bar-Ram's drafts on Shalom is not clearly erroneous.

### III

The lower court awarded Bar-Ram damages against Phenix-Girard on the theory that the bank's failure to obtain a valid acceptance of the drafts prevented Bar-Ram from collecting on its insurance policy with IFTRIC. In so doing, the court relied on Ala.Code § 7–4–103(5) (1975), which provides that:

> The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by the amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.

Alabama case law provides no authoritative construction of this common U.C.C. provision. However, the direct damage contemplated by this section seems to be the loss to a firm from its inability to collect on the specific draft or note at issue. *Cf. Evra Corp. v. Swiss Bank Corp.,* 673 F.2d 951, 955 (7th Cir.1982), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 377, 74 L.Ed.2d 511 (1982) (direct damage in bank failure to make fund transfer is loss of funds themselves or interest thereon; other damages are consequential). In construing the identical U.C.C. provision in Iowa, another court has noted that " 'collectability' is the key to defendant's liability to plaintiffs...." *Marcoux v. Mid-States Livestock, Inc.,* 429 F.Supp. 155, 161 (N.D.Iowa 1977), *mod. on other grounds sub nom. Marcoux v. Van Wyk,* 572 F.2d 651 (8th Cir.1978). This interpretation, which focuses the direct damages inquiry on the collectability of the instrument itself, finds support in the Code's provision for reduced recovery if all or part of the "item" could not have been collected even by the use of ordinary care—that is, where the drawee was insolvent. *See* Ala.Code § 7–4–103(5)

---

1. The random or unexplained appearance of Shalom's name anywhere on the instrument would not be sufficient—the representative should "make the name of the agent and principal refer to each other so that a reasonable person could understand from the face of the instrument that the agent signed as a representative." *Phenix-Girard Bank, supra,* 414 So.2d at 928.

(1975), comment 6; *Marcoux, supra,* 429 F.Supp. at 161; *Whalen and Sons Grain Co. v. Missouri Delta Bank,* 496 F.Supp. 211, 215 (E.D.Missouri 1980).

However, Bar-Ram alleges no damages from its inability to collect on the drafts themselves due to the bank's negligence. Instead, it seeks recovery from the bank for its inability to collect under the terms of a collateral insurance policy. This is arguably a consequential damage, subject to the bad faith standard of Section 7–4–103(5) or, if the latter does not apply, the old common law rule of *Hadley v. Baxendale,* 156 Eng.Rep. 145 (1854), which limits defendant's liability for breach of contract to those damages within the contemplation of the parties when the contract was made. *See, e.g., Evra Corp., supra,* 673 F.2d at 955–56; *Spang Industries v. Aetna Casualty & Surety Co.,* 512 F.2d 365, 368 (2d Cir.1975).

The district court made no findings on the question of whether the damages alleged by appellees were direct or consequential, or, if the latter, whether bad faith or *Hadley*'s "special circumstances" were involved. Thus, we are unable to review the damage award in this case. We therefore VACATE that award and REMAND the damages issue to the district court for fuller consideration.