**Inez RICHARDSON, Appellant,**

v.

**COLONIAL LIFE AND ACCIDENT INSURANCE COMPANY,**
**Respondent.**

**No. WD 38402.**

Missouri Court of Appeals,
Western District.

Feb. 3, 1987.

John F. Payne, Kansas City, for appellant.

Benjamin F. Mann, Michael D. Gibbons, Kansas City, for respondent.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

From a jury verdict in favor of Colonial Life the plaintiff (herein after appellant) appeals.

Appellant is the named beneficiary under an accidental death insurance policy issued and delivered to Michael Wayne Richardson. The premiums were paid and the policy was in full force and effect at the time Richardson met death.

On February 14, 1983, the deceased Richardson and Willie "Poola" Cubit entered the Payless Shoe Store on Swope Parkway in Kansas City, Missouri, and at the point of a gun and under threat of death to the occupants, relieved the store of its day's receipts. Additionally, they robbed Gene Washington, a customer, of $40. All of

those in the store were forced to lie face down on the floor as the robbers made their exit. Unbeknownst to the robbers they were being photographed during the entire episode and defendant's exhibit 8 depicts the deceased holding a gun on Washington.[1] Washington testified the time was approximately 4:15 p.m.

The robbers fled to 6655 Bales, the residence of Thomas Sims. According to Sims, they arrived at his house about 5:00 o'clock p.m. Sims testified he had known Michael Richardson for eighteen years and Willie Cubit for twelve years and that when they arrived the two were arguing over the money which they were carrying in a bank bag. Cubit was armed and gave Sims his gun and Sims hid it under a cushion on the couch. Sims counted the money and it came to $280 which then divided it into two equal parts. Sims understood the money came to $280 which they divided it into two $15 of the $280 was his and in his possession before the robbery and should not be divided. Cubit and Richardson shouted and argued about this $15 and Richardson initiated physical contact and then pushed Cubit backwards. At this juncture, Cubit retrieved his gun and placed it in "the waist band of his trousers." The argument continued with Richardson calling Cubit [Poola] a punk and pushing him back. The parties continued screaming at each other and Cubit told deceased to keep his hands off him and stop calling him names. After Cubit pulled his gun, they continued to argue and Cubit warned deceased to stop arguing but Richardson did not back down from the confrontation. Richardson asked Cubit to take the gun out of his face and when he didn't Richardson slapped the gun away. Cubit brought the gun back up and they continued arguing. When Michael pushed Cubit, Cubit took a half step back. Cubit then pushed Michael Richardson and he fell into the wall and knocked the television off the stand. When Michael Richardson got up, Willie Cubit pulled the pis-

tol. It was during this episode that Cubit shot and killed Richardson.

Cubit was subsequently indicted by the Grand Jury on the charge of second degree murder. He pled guilty to the reduced charge of manslaughter and was sentenced to three and one half years at the Missouri Department of Corrections.

Following a jury verdict against appellant for recovery under the policy and for vexatious delay and attorney fees this appeal was filed. Appellant raises six points of error which are here taken up.

Appellant alleges the trial court erred in denying her motion in limine regarding evidence of the robbery since the robbery was not related to Michael Richardson's death.

 Had it not been for the robbery Richardson and Cubit would not have been dividing money and an argument would not have ensued ending up in Willie Cubit shooting Michael Richardson.

The policy under which Michael Richardson was insured provides:

> This policy does not cover any loss caused or contributed to by, or occurring as follows: "Crime—Committing or Attempting to Commit any Crime."

In addition to the antecedent robbery, the deceased was engaged in an assault and receiving stolen property at the time of his death.

The jury heard the evidence and concluded that the money was stolen and that Michael Richardson knew it was stolen and that his death resulted from the acts aforesaid following the robbery. There can be no doubt deceased knew the money was stolen. Appellant complained that a "false issue" would be injected if evidence about the robbery was permitted. In *Dyer v. Globe-Democrat Publishing Company*, 378 S.W.2d 570, 581 (Mo.1964), the court held:

> Where evidence is admissible for one purpose or one issue, but would be improper for other purposes or issues, it

---

1. The appellant, mother of Michael Richardson, identified her son as appearing in photographs marked respondent's exhibits 6, 7, 8, 9, 10, 11.

should be received, and the objector then has the right to an instruction, if he requests it, limiting the extent to which and the purpose for which the jury may consider such evidence. In the absence of a proper request therefor, the objector cannot successfully complain of the failure of the court to give a limiting instruction.

■ The appellant did not seek a limiting instruction as *Dyer* provides. Appellant's Point I is denied.

Next appellant alleges the trial court erred by permitting respondent to exhibit six colored photos to the jury allegedly showing Michael Richardson with a gun committing a robbery because these acts were not connected with his death. This argument is not persuasive.

■ Deceased's mother, and Gene Washington, robbery victim, both identified Michael Richardson as the robber. The photos clearly demonstrate his participation in the robbery. As a result of his participation in this crime, he subsequently was engaged in an assault and receiving stolen property when he was shot and killed. Under *Dyer, supra,* appellant could have sought a limiting instruction. She did not.

Appellant concludes the court abused its discretion regarding the introduction in evidence of the photos but she fails to explain how she arrives at this conclusion. The photographs were relevant to one of respondent's defenses that deceased met his death as a result of criminal activity.

■ The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration. *Watkins Investment Co. v. William B. Tanner Co.,* 684 S.W.2d 929, 937 (Mo.App.1985). Certainly, that is not the case here. The trial court was very thorough, deliberate and considerate in its ruling on this point. Since the photos were in evidence, counsel may pass them to the jury, use them in examination of witnesses, or refer to them in oral argument. *State v. Eilers,* 406 S.W.2d 567, 571 (Mo.1966). Appellant's Point II is denied.

■ Next appellant complains the trial court erred when it refused to give instruction B withdrawing facts concerning the robbery from the case. Appellant alleges no causal connection between the robbery and Michael Richardson's death and therefore the withdrawal instruction should have been given. Appellant relies on *White v. Missouri Insurance Co.,* 103 S.W.2d 514 (Mo.App.1937), for support. In *White, supra,* the insured was injured by a stranger with whom she had been playing poker for money approximately an hour and a half after the game had broken up. The court found that this was not one continuous transaction where her disability or injury resulted from a violation of law denying her benefits under an insurance policy; the poker game had ceased when plaintiff was injured. *Id.* at 518. The case at bar is distinguishable. Here, the disposition of the stolen property and the assault by Richardson occurred contemporaneously with the killing. The robbery was the touchstone, the nexus of the events that triggered the death of Michael Richardson and the court correctly ruled. Appellant's Point III is denied.

In Point IV appellant alleges the trial court failed to properly construe the meaning of the insurance policy language, "Crime—Committing or Attempting to Committ any Crime." Appellant has failed to establish how the trial court erred.

To give true flavor to appellant's argument under Point IV it is quoted herein in its entirety:

THE COURT ERRED IN FAILING TO CONSTRUE, AND TO DECLARE AS A MATTER OF LAW, AND MISCONSTRUED THE MEANING OF THE DISPUTED POLICY LANGUAGE "CRIME —COMMITTING OR ATTEMPTING TO COMMIT ANY CRIME" IN THAT THE SETTLED CASE LAW IN MISSOURI REQUIRES THAT THE DEATH OF THE INSURED BE CAUSED BY THE VIOLATION OF THE LAW, AND NOT

MERELY THAT AT THE TIME OF THE DEATH THE INSURED WAS VIOLATING THE LAW AS RESPONDENT ARGUED, WHICH SAID ARGUMENT THE COURT BY IMPLICATION ACCEPTED

■ It is true ·that insurance policies must be read as a whole and reasonably interpreted to be consistent with apparent object and intent of the parties. *McRaven v. F–Stop Photo Labs Inc.*, 660 S.W.2d 459, 462 (Mo.App.1983). Should the language of the policy be ambiguous or uncertain or susceptible of two interpretations, the construction will favor the insured. *Meyer Jewelry Company, Inc. .v. General Insurance Co. of America*, 422 S.W.2d 617, 623 (Mo.1968). The policy language is not ambiguous and point IV is denied.

By its instructions to the jury the court declares its construction of the law. *Dorrin v. Union Electric Co.*, 581 S.W.2d 852, 860 (Mo.App.1979). The trial court did instruct the jury in Instructions 8, 10, 11. The latter two are taken up in Appellant's Points V and VI.

■ For Point V appellant complains Instruction 8 did not provide that the jury find a causal connection between the crimes and the death of Richardson. This is not so. Instruction 8 reads as follows:

Your verdict must be for defendant if you believe: Michael Richardson's death was caused or contributed

to by, or occurred by Michael Richardson committing or attempting to commit receiving stolen property, or assault in the third degree.

The instruction tracks the language of the policy. The evidence shows deceased was engaged in a crime and that he died as a direct result of an argument and altercation over the division of stolen property. He died in the act of disposing of the stolen property.

The complained of instruction followed the language of the contract and was proper. *Redman v. Western and Southern Life Insurance Co.*, 187 S.W.2d 842, 849 (Mo.App.1945).

■ The court has sorted through and sifted out the appellant's many complaints under Point V. Appellant raised other issues, i.e., vexatious delay, reasonableness of the denial of the claim, improper examination by defendant of a witness, that were not presented in the points relied on and not preserved for appellate review. *State v. Hanson*, 587 S.W.2d 895, 903–904 (Mo. App.1979). The court declines to take up these issues.

■ Finally, appellant, under Point VI, alleges the trial court erred in giving instructions 10 and 11 as being overly broad and giving the jury a roving commission. Instruction 10 reads:

"Receiving stolen property" as used in these instructions means that a person, for the purpose of depriving the owner of a lawful interest therein, received, retained, or disposed of property of another knowing that it has been stolen, or believing that it had been stolen.

and Instruction 11 reads:

"Assault in the third degree" as used in these instruction means that a person purposely placed another person in apprehension of immediate physical injury, or he knowingly caused physical contact with another person knowing the other person would regard the contact as offensive or provocative.

Under *Davis v. Moore*, 553 S.W.2d 559, 562 (Mo.App.1977), the court found it proper to give an instruction following the language of the statute. The exception to this rule is if the statute is peculiar, technical or so general that the jury might not understand it.

Certainly, such is not the case at bar. It appears the appellant would revert to pre–MAI days in which instructions, if any, took up an inordinate amount of preparation time and judicial time. The respondent's Instructions 10 and 11 are clear concise and track the statute and direct the jury to the ultimate issue.

The appellant would have us compare these instructions to MAI criminal instructions. However, beyond a reasonable

doubt is not an issue and such a request by appellant would only serve to complicate and confuse a jury. Appellant's Point VI is denied.

Judgment affirmed.