**UNITED POSTAL SAVINGS ASSOCIATION, Appellant,**

v.

**ROYAL BANK MID–COUNTY, now known as Royal Banks of Missouri, Respondent.**

**No. 56452.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 27, 1990.

Michael A. Campbell, Sestric & Korum, Clayton, for appellant.

Patrick H. Gadell, Terrence F. Moffitt, Law Offices of Thomas R. Green, St. Louis, for respondent.

HAMILTON, Presiding Judge.

Appellant, United Postal Savings Association (hereinafter United Postal), appeals a judgment in its favor for the sum of $825 plus interest. United Postal pleaded a loss of $4000, plus interest and attorney's fees, due to improper notice of nonpayment of a $6000 check drawn on Respondent, Royal Bank Mid–County (hereinafter Royal).

On December 15, 1986,[1] Henry Jones (hereinafter Jones) deposited into his United Postal account check number 1008 for $6000 drawn on the account of Professional Enterprises and Service Company at Royal. United Postal gave Jones immediate credit, which brought his account balance to $6035.37. On that same day, Jones made three withdrawals in the following amounts: $600, $250, $2500. By the end of the day, his account balance was $2685.37. On December 16, Jones withdrew $175, further reducing his account balance to $2510.37.

Jones made a second deposit of $3800 on December 17, which raised his account balance to $6310.37. On the same day, he made two further withdrawals for $600 and $1050, leaving a balance of $4660.37.

United Postal deposited, endorsed, encoded, and forwarded the $6000 check through the Federal Home Loan Bank for collection on December 15. The Federal Home Loan Bank received it that day. The check proceeded through banking channels until it reached Royal on December 16. At that point Royal determined the account was closed. Regulation J, 12 C.F.R. § 210.12(c)(1), required Royal to provide notice to the bank of first deposit, in this case United Postal, on all items $2500 or more that Royal declined to pay.

Banks have the option to contact directly the first bank of deposit or to use the services of federal reserve banks. Royal chose to use a system of return item letters provided by the Federal Reserve. Red return item letters are used for large dollar items ($2500 or more) requiring immediate notice of nonpayment. Yellow return item letters are used for all other returns.

Royal stipulated that it used the yellow letter, not the required red letter. Consequently, the Federal Reserve bank gave no immediate notice of nonpayment that was due under the regulations by midnight on December 18. United Postal received no notice until the afternoon of December 22 when the item itself was returned.

Jones made two withdrawals after the December 18 notice deadline and before actual notice on December 22. On December 19, Jones withdrew $1500, leaving a balance of $3160.37. On the morning of December 22, he withdrew $2500, leaving a balance of $660.37.

United Postal received notice that both the $6000 and the $3800 checks were being returned unpaid. Royal's dishonor of the $3800 check was proper. Only the handling of the $6000 item is in dispute.

United Postal filed suit and in its amended petition asserted that Royal "failed to exercise ordinary care and notify United Postal ... that it was returning check No. 1008 unpaid by midnight of the second banking day following the expiration of Royal Bank['s] ... original midnight deadline pursuant to Regulation J...." United Postal pleaded a $4000 loss based on the two withdrawals after the December 18 notice deadline and before United Postal froze the account when the items were returned December 22. United Postal conceded Royal was not responsible for the $5175 in withdrawals paid before notice from Royal was due.

The trial court, applying Section 400.4–103(5) of the UCC, found in favor of United Postal in the sum of $825, the amount of the disputed item, or $6000, reduced by the amount paid out prior to the deadline, or $5175. The trial court refused to award attorney's fees, stating that

> [w]hile Judgment herein favors plaintiff, there has never been serious contention between the parties as to the $825 at the same time, defendant has never formally offered Judgment, a proceedings [sic] authorized by Mo. statutes, to alloy [sic] costs, interests, etc. Therefore, attorney's fees will not be granted to either party.

The trial court explicitly recognized that the statute permitted attorney's fees but chose not to award them.[2]

---

1. All dates are in 1986 unless otherwise specified.

2. Both parties requested attorney's fees under Regulation J. United Postal sought attorney's fees of $5935.

United Postal raises two points on appeal. It asserts the trial court erred (1) in awarding only $825 where the evidence established a loss of $4000 and (2) in failing to enter judgment for attorney's fees where Regulation J provides that the prevailing party may recover its reasonable attorney's fees.[3]

■ This Court will sustain the judgment in a court-tried case unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Moreover, a decision to reverse because the judgment is against the weight of the evidence is made with caution and with a firm belief that the judgment is wrong. *Id.*

■ The issue of damages in this instance is controlled by Section 400.4–103(5) RSMo 1986:

> The measure of damages for failure to exercise ordinary care in handling an item is *the amount of the item reduced by an amount which could not have been realized by the use of ordinary care*, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.[4]

(Emphasis added). In the absence of bad faith, the statute sets a cap on damages as the amount of the item, in this case $6000. That amount must be reduced by an amount "which could not have been realized by the use of ordinary care" or, as Regulation J states, "the amount of the loss that the depositary bank would have incurred even if the paying bank had used ordinary care." United Postal allowed withdrawals totalling $5175 before the mishandled notice was due. Had Royal complied completely with the notice requirements, the $5175 loss would still have occurred. The trial court properly reduced the $6000 amount of the item by the $5175 loss that would have occurred even in the exercise of ordinary care, leaving a judgment for $825.

■ The trial court recognized that United Postal's claim is based on conventional tort theory of consequential damages. However, § 400.4–103(5) requires a showing of bad faith for the recovery of consequential damages. The trial court specifically found that "[t]he evidence does not support a finding that defendant acted in bad faith, and no such contention is made by United Postal." The record discloses no evidence to the contrary. Because Royal sent proper notice of dishonor of the $3800 item, recovery of any part of that amount is prohibited by statute.

United Postal cites *Bar–Ram Irrigation Prods. v. Phenix–Girard Bank*, 779 F.2d 1501 (11th Cir.1986) and *Whalen & Sons Grain Co. v. Missouri Delta Bank*, 496 F.Supp. 211 (1980) in support of its position. In *Bar–Ram*, the Eleventh Circuit Court of Appeals examined an Alabama measure of damages provision identical to Missouri's provision. It noted that Alabama case law provided no guidelines for construction of the provision but stated that "the direct damage contemplated by this section seems to be the loss to a firm from its inability to collect on *the specific draft or note at issue.*" *Bar–Ram*, 779

**3.** In the argument portion of their briefs, both United Postal and Royal discussed the elements necessary for liability under the ordinary care standard of § 400.4–103 and Regulation J. The issue of liability, however, is not raised as a point on appeal. Hence, we will not address the issue of liability. Rule 84.04(d); *Richardson v. Colonial Life & Accident Ins. Co.*, 723 S.W.2d 912, 916 (Mo.App.1987); *Christine H. v. Derby Liquor Store*, 703 S.W.2d 87, 88 (Mo.App.1985).

**4.** Section 400.4–103(1) and (2) provides for variation of the UCC by agreement. Under these provisions, Federal Reserve regulations and operating letters, such as Regulation J, 12 C.F.R. § 210.12(c)(6), are treated as agreements varying the UCC. Regulation J provides the following:

> A paying bank that fails to exercise ordinary care in meeting the requirements of this paragraph shall be liable to the depositary bank, for losses incurred by the depositary bank, *up to the amount of the item, reduced by the amount of the loss that the depositary bank would have incurred even if the paying bank had used ordinary care.*

Both formulas for calculating damages are essentially the same.

F.2d at 1504. (Emphasis added). Although United Postal considers *Bar–Ram* only in terms of collectability, the *Bar–Ram* decision makes clear that the collectability of the specific item dishonored is the pertinent inquiry, not the collectability of other unrelated items. *Bar–Ram*, therefore, supports the trial court's calculation of damages.

Similarly, *Whalen & Sons* supports the trial court's findings that the basis of United Postal's $4000 claim is consequential, not direct, damages. Plaintiff in *Whalen & Sons* sold grain to Bootheel Express over a period of time. The defendant bank failed to use ordinary care in that it gave no wire notice of dishonor to the Federal Reserve on three items, each in excess of $2500. Plaintiff continued to sell grain to Bootheel Express. The trial court allowed no recovery on the items themselves because Plaintiff did not "show at least a reasonable chance of collection." *Whalen & Sons*, 496 F.Supp. at 215. Plaintiff also argued that if defendant had given notice, it would not have made subsequent sales to Bootheel. This argument is analogous to United Postal's argument that it would have frozen the subsequent $3800 deposit as well. The trial court in *Whalen & Sons* found, however, that the claim was factually doubtful and, in any event, was a claim for consequential damages. *Id.* In the absence of bad faith, no recovery is allowed for consequential damages. United Postal's first point is denied.

■ United Postal also contends the trial court erred in failing to enter judgment for attorney's fees where Regulation J, 12 C.F.R. § 210.12(c)(6), provides that "[i]f the paying bank or the depositary bank prevails in litigation involving the requirements of this paragraph, it may recover its court costs and reasonable attorney's fees." United Postal relies on *Stamm v. Desnoyers*, 263 S.W.2d 45 (Mo.App.1953). *Stamm* is an appeal of an post-judgment order allowing attorney's fees to be paid out of the estate in a will construction case. In reviewing the adequacy of the attorney's fees, the court stated that "the appellate court is under the same duty to review

such matters as they [sic] are in any appeal in a case of an equitable nature...." *Id.* at 47. The court in *Stamm* examined the entire record and reached its own conclusions, giving deference to the findings of the trial court where a question of veracity was involved. *Id. Stamm*, however, predates *Murphy v. Carron*.

The trial judge is an expert on attorney's fees, and, when attorneys fees are in issue, should hear from the parties on this matter as in other matters. *O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 71 (Mo. banc 1989). Here the judge considered the itemized accounting of fees and the actions of the parties and awarded no fees. The determination of reasonable litigation expenses is within the sound discretion of the trial court. That determination will remain undisturbed absent a clear showing of abuse of discretion. *Colony–Lobster Pot Corp. v. Director of Revenue*, 770 S.W.2d 705, 708 (Mo.App.1989); *Tipton v. Barton*, 747 S.W.2d 325, 332 (Mo.App.1988). The use of the permissive verb "may" in the regulation indicates its drafter intended the trial court to have wide latitude in its discretion as it does at common law. *See State v. Patterson*, 729 S.W.2d 226, 228 (Mo.App. 1987). The record contains no evidence of an abuse of discretion by the trial judge. The second point is denied.

Judgment affirmed.

SATZ and STEPHAN, JJ., concur.