STATE of Missouri, Respondent,

v.

Billy D. JOHNSON, Jr., Appellant.

No. WD 50758.

Missouri Court of Appeals,
Western District.

Sept. 17, 1996.

Jarrett Aiken Johnson, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Four-month-old Jauanea Price suffers serious and debilitating physical injuries which her treating doctor has diagnosed as "shaken baby syndrome." Defendant–Appellant Billy Johnson was convicted of causing these injuries based largely on the testimony of Marcus Drizzle, nine years old at the time of trial, that two years earlier he saw Mr. Johnson shaking Jauanea so that her head "bobbed" a few hours before she began to display symptoms of shaken baby syndrome. Marcus accompanied his testimony with gestures which indicated that the bobbing resulted from violent shaking.

Was this evidence adequate to support the jury's verdict against Mr. Johnson in light of the countervailing evidence that he did not violently shake the baby and that other children and adults were present in the house at the time the injuries occurred and could have caused those injuries? We find that, considered in the light most favorable to the verdict, the evidence adequately supported the finding of guilt.

We further reject Mr. Johnson's claim that the trial court should not have allowed the jury to see a photograph of Jauanea while in the hospital. He says that the photograph may have inflamed the passions of the jury and that it merely duplicated testimony about Jauanea's injuries. Missouri has consistently upheld introduction of a photograph if it is relevant to the nature and location of the victim's wounds, even if witnesses also testify about the victim's injuries. Accordingly, the trial court did not err in admitting the photograph.

Mr. Johnson also claims that the trial court erred in finding that the State's peremptory strike of a black male juror was not pretextual where one of the three reasons offered by the prosecutor for rejecting the juror was not justified or plausible. Because the other two reasons offered were race-neutral and plausible, we reject defendant's contention.

Finally, we reject Mr. Johnson's further claim that he was entitled to an evidentiary hearing on his motion for post-conviction relief under Rule 24.035 based on his claim that defense counsel did not adequately cross-examine Marcus. An evidentiary hearing is not required where the motion and record conclusively refute the claim that counsel was ineffective. The transcript reveals that counsel adequately cross-examined Marcus about what he saw. Accordingly, an evidentiary hearing was unnecessary.

## I. STATEMENT OF THE FACTS

Jauanea Jones is the daughter of Kendra Price. She was born on January 23, 1992. Ms. Price and Jauanea lived with Billy Johnson. On the night of June 4, 1992, Ms. Price left Jauanea with Mr. Johnson. Jauanea did not appear sick to Ms. Price when she left. Several adults and children were in the apartment that evening. One of the children, a nine-year-old girl named Artisha Warner, laid Jauanea down in an attempt to stop her from crying. When this failed, she gave Jauanea to Mr. Johnson. Mr. Johnson prepared a bottle for Jauanea and took her to a bedroom. As then seven-year-old Marcus Drizzle walked by the bedroom he said he saw Mr. Johnson shaking Jauanea so that her head "kind of bobbed." After about five minutes Mr. Johnson came out of the bedroom and said that Jauanea was going to sleep. Ronald Cole, a visiting adult, testified that he heard no more crying from Jauanea. Sometime around 8:30 or 9:00 p.m., John Robinson, another adult, arrived at the apartment. Sometime thereafter, Mr. Robinson and Mr. Johnson left the apartment for approximately ten minutes, leaving Mr. Cole with the children. After returning, Mr. Robinson noticed Jauanea frothing at the mouth with her eyes rolled back into her head. She had a blue mark on her head. Jauanea's mother, Ms. Price, soon returned and rushed Jauanea to the hospital.

The hospital physicians treated Jauanea for retinal hemorrhages in both eyes, bleeding in the cranial region, swelling of the head, and an overlapping of the bones in her skull. The treating doctor diagnosed the injuries as "shaken baby syndrome." The doctor offered his expert medical opinion that the baby had been shaken within the preceding six hours.

## II. THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE VERDICT

Mr. Johnson was charged under § 565.050, RSMo 1994, with assault in the first degree.

He was convicted following a jury trial and was sentenced to ten years in prison. On appeal, Mr. Johnson contends that the State did not present sufficient evidence that he caused Jauanea's injuries, and that its case was instead based solely on suspicion, conjecture, and emotion—elements insufficient to support a criminal conviction.

To find Mr. Johnson guilty of first degree assault, the jury had to find beyond a reasonable doubt that he knowingly caused serious physical injury to Jauanea. Mr. Johnson concedes that the evidence at trial conclusively established that: (1) he was at home and responsible for supervising Jauanea; (2) Jauanea seemed to be healthy when Ms. Price left the house around 7:00; (3) two other adults, Mr. Cole and Mr. Robinson, were at the house; (4) for much of the evening Jauanea was with Artisha, a nine-year-old girl; (5) Jauanea was alone with Mr. Cole for perhaps twenty minutes; (6) Mr. Johnson put Jauanea to bed after Ms. Price left and at that point the baby stopped crying; and (7) the baby was demonstrating strange behavior when viewed an hour or so later and was rushed to the hospital. He does not, however, believe that there is enough other evidence to prove that he, rather than someone else, was the cause of Jauanea's injuries. He directs us to the fact that other persons were alone with Jauanea and, therefore, could have caused her injuries. He says that as a result the jury finding that he caused the injuries was improper speculation.[1]

█ While we agree that there was evidence that other persons had the opportunity to shake Jauanea, we disagree that this means that the State failed to present sufficient evidence of Mr. Johnson's guilt. Challenges to the sufficiency of the evidence are limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. The re-

viewing court does not re-weigh the evidence or re-evaluate the credibility of witnesses because these matters are solely within the province of the jury. Rather, the reviewing court views the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the State and disregards all evidence and inferences to the contrary.[2] In so doing, however, we will not "disregard the dictates of common reason" nor will we give the prevailing party "the benefit of any other than reasonable inferences."[3]

█ Viewed under this standard, there was adequate evidence to support the conviction. In addition to the circumstantial evidence just noted, there was Marcus Drizzle's eyewitness testimony. Marcus was seven at the time of the incident, and nine at the time of trial. He testified that he saw Mr. Johnson holding Jauanea through a partially-open bedroom door, and that he saw Jauanea's head "kind of bobbing" because Mr. Johnson was shaking her.

Mr. Johnson argues that by this testimony Marcus only showed that Jauanea's head was bobbing, not that Mr. Johnson actually shook her. His argument is disingenuous. Even if Marcus' testimony was inadequate, the transcript reveals that Marcus accompanied his testimony with a demonstration for the jury of the manner in which Mr. Johnson shook the baby. In overruling Mr. Johnson's motion to acquit, the trial judge noted that Marcus' gestures could be characterized as "a violent shaking." It was up to the jury to determine whether they believed Marcus' description, and if so whether it explained the cause of Jauanea's shaken baby syndrome. This point is denied.

## III. BATSON DID NOT REQUIRE THE TRIAL COURT TO FIND THE STATE'S STRIKE OF A BLACK MALE JUROR TO BE PRETEXTUAL

At trial Mr. Johnson challenged the State's use of its peremptory strikes to remove three

---

1. *See State v. Cook*, 697 S.W.2d 272, 275 (Mo. App.1985).

2. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995); *State v. Grim*, 854 S.W.2d 403, 405, 411 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct.

562, 126 L.Ed.2d 462 (1993); *State v. Idlebird*, 896 S.W.2d 656, 660–61 (Mo.App.1995).

3. *Begley v. Connor*, 361 S.W.2d 836, 839 (Mo. banc 1962).

of the four blacks who were part of the thirty-four person jury venire, citing *Batson v. Kentucky*.[4] The trial court rejected his challenge. On appeal, Mr. Johnson does not continue to challenge the striking of two of the black venirepersons, but alleges that the striking of the third venireperson, a black male, was racially motivated.

*Batson* held that the State may not strike venirepersons on account of their race. It used a three-step approach in analyzing peremptory challenges allegedly motivated by race. Under that approach the opponent of a peremptory challenge has the initial burden of making out a *prima facie* case of racial discrimination. If that burden is met, then:

> the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.[5]

In applying *Batson*'s three-step test, Missouri cases have held that once the defendant raises a *Batson* challenge with regard to one or more specific venirepersons struck by the State and identifies the cognizable racial group to which they belong, the State is required to offer a race-neutral explanation for the strike.[6] The State's explanation satisfies this test unless the rationale offered is inherently discriminatory.[7]

Once the State offers its race-neutral explanation, the burden of production shifts back to the defendant to show that the proffered race-neutral explanation is pretextual and that the strikes were racially motivated. In order to meet this standard, defense counsel must present evidence or specific analysis showing that the State's ex-

planation is pretextual. Defense counsel cannot simply rely on conclusory allegations that the real motivation for the strike was racial in nature.[8]

In this case, Mr. Johnson properly raised his claim that the State's strike of the 39–year–old black male venireperson was based on race. The prosecutor then rebutted Mr. Johnson's *Batson* challenge by offering the following three explanations for striking the venireperson:

- the venireperson was a guard at the county jail and the prosecutor believed that jail employees may be undesirable jurors because they sometimes take up the causes of prisoners;
- two of the venireperson's family members had been prosecuted by the Jackson County prosecutor, the same prosecutor's office that was prosecuting defendant; and
- the 39–year–old venireperson might identify with the 23–year–old defendant as a "younger male."

Once the State offered these explanations, it was incumbent on defendant to offer specific evidence or analysis showing that the State's explanations were pretextual. Defendant did not even attempt to meet this burden in response to the State's explanation that it struck the venireperson because of his experience as a guard.

Defendant did attack the other two explanations offered. He pointed out that a white venireperson who was not struck also had a relative in jail, and that a 23–year–old white male was not stricken even though he also was a "younger male." In response, the prosecutor explained that the relative of the white venireperson was being prosecuted by the State of Kansas, not by the same Missouri prosecutor's office which was prosecut-

**4.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**5.** *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 89. *See also, Purkett v. Elem*, —— U.S. ——, —— ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995); *State v. Weaver*, 912 S.W.2d 499, 509 (Mo. banc 1995).

**6.** *State v. Parker*, 836 S.W.2d 930, 938 (Mo. banc), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992); *State v. Antwine*, 743

S.W.2d 51, 64 (Mo. banc 1987); *State v. Watts*, 919 S.W.2d 287, 290 (Mo.App.1996).

**7.** *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991); *Weaver*, 912 S.W.2d at 509.

**8.** *State v. Mack*, 903 S.W.2d 623, 628–30 (Mo. App.1995). *See State v. Davis*, 894 S.W.2d 703, 707 (Mo.App.1995); *State v. Boyce*, 887 S.W.2d 447, 451 (Mo.App.1994); *see also Parker*, 836 S.W.2d at 939; *Watts*, 919 S.W.2d at 291.

ing defendant. The prosecutor did not explain why she did not strike the white 23–year–old male. She did, however, exercise other strikes based on age, and in particular, struck upper-middle-aged female jurors unless she had a particular reason to think they might be favorable to the State.

 In analyzing these explanations to determine whether the defendant met his burden of showing that the prosecutor's strike was racially motivated, the trial court was primarily required to consider the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case.[9] In so determining, any facts or circumstances that detracted from or lent credence to the State's explanation were relevant, including whether any similarly situated white venirepersons escaped the State's challenge. Objective explanations are given greater weight, but the State may rely on hunches in making peremptory strikes as long as its subjective intent is race-neutral.[10]

In this case, the trial court rejected the *Batson* challenge because it found that the rationales that the venireperson's relatives had been prosecuted by Jackson County and that he was a jailor provided rational, plausible explanations for the strike and distinguished this venireperson from other venirepersons not stricken. Because these two rationales were adequate, the trial court held that the weakness of the third explanation— that the venireperson was a "young male"— did not make the strike pretextual, stating:

> Well, I don't know about the age business on Carter. I think the two relatives in prison prosecuted by this prosecutor's office is probably enough to justify taking

Mr. Carter off. That does sound to me like a nondiscriminatory reason, and I have never given a moment's thought to jail personnel as jurors, but that doesn't sound like a discriminatory reason for taking somebody off and I'm trying to think, I'm trying to picture the guards. They're not all black, are they? Some of them are white. Okay. I'll disallow the objection on Carter.

The trial court's findings are entitled to great deference because its decision depends largely on the evaluation of intangibles such as credibility and demeanor.[11] We will not set aside the court's findings unless they are clearly erroneous. A finding is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been made based on an evaluation of the entire evidence.[12]

 We agree with the trial court that the defendant failed to meet his burden to demonstrate that the prosecutor's explanation was pretextual when she justified striking the venireperson because of his employment as a jailor. Indeed, defendant did not offer any rebuttal to this explanation, and thus did not preserve any objection to it for review.[13] In any event, numerous courts have found that a person's occupation is an adequate, race-neutral reason for exercising a peremptory challenge.[14]

 We also agree with the trial court that the prosecutor's explanation that she believed that the venireperson would likely be biased against the State because a relative was being prosecuted by her office adequately justified the strike. Again, numerous courts have found that the arrest, prosecution, or incarceration of a relative is a race-

---

9. *See Parker*, 836 S.W.2d at 939.

10. *Id.* at 939–40.

11. *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21; *Parker*, 836 S.W.2d at 934; *State v. Antwine*, 743 S.W.2d at 65–66.

12. *Antwine*, 743 S.W.2d at 66.

13. *See Mack*, 903 S.W.2d at 629; *State v. Davis*, 894 S.W.2d 703, 707 (Mo.App.1995); *State v. Boyce*, 887 S.W.2d 447, 451 (Mo.App.1994).

14. *See United States v. Miller*, 939 F.2d 605, 607 (8th Cir.1991) (finding no clear error in striking a Legal Services employee because of her exposure to the law and teachers because of their sympathetic nature); *State v. Neil*, 869 S.W.2d 734, 737 (Mo. banc 1994) (finding no clear error in striking juvenile court employee because they are "accustomed to lenient dispositions in juvenile cases"); *State v. McGuire*, 892 S.W.2d 381, 384 (Mo.App.1995) (finding no clear error in striking housing inspector because of his exposure to family living arrangements).

neutral reason for exercising a peremptory challenge.[15]

Defendant argues we should nonetheless reverse because of the doubtful validity of the third explanation given—that the 39-year-old venireperson might identify with defendant as a young male. Defendant cites no cases holding that a strike will be found racially motivated if any one of multiple explanations offered for the strike would not be adequate if offered alone, however, and the only Missouri case to address this issue held to the contrary.[16] We think that the offer of an invalid reason is a relevant factor to consider, but the decision is one to be made on the basis of the totality of the facts and circumstances. Here, the trial court found the strike to be valid and not pretextual. The record supported this determination.

## IV. *THE PHOTOGRAPH OF THE VICTIM WAS NOT UNDULY INFLAMMATORY*

Prior to trial, Mr. Johnson made a motion *in limine* to prevent the State from offering a photograph of Jauanea into evidence. The photograph showed Jauanea, then five months old, recuperating from her injuries in a hospital oxygen tent with tubes attached to her body. Mr. Johnson concedes that the photograph had probative value as unequivocal proof of Jauanea's serious physical injuries. He argues, however, that its probative value was outweighed by its prejudicial effect because it was unduly gruesome, and the same information was adequately conveyed by the testimony of Jauanea's doctor and mother.

The trial court denied Mr. Johnson's motion. The trial court is vested with broad discretion in determining the admissibility of photographs. Its determination may be overturned only upon a showing that it abused its discretion.[17]

As a general rule, photographs are admissible if they are relevant to any material issue in the case. Photographs may be relevant to show the nature and location of wounds, to enable the jury to better understand the testimony, to corroborate the testimony of a witness, or to aid in establishing an element of the State's case.[18] Here, the photograph was relevant to show Jauanea's condition, to corroborate the witnesses' testimony, and to assist the jury in understanding the facts and testimony. It revealed the extent of Jauanea's injuries through a medium that the members of the jury could more easily understand.

Further, the photograph was relevant to establish an element of the crime. A conviction of assault in the first degree requires a showing of "serious physical injury." *See* § 565.050, RSMo 1994. As Mr. Johnson concedes, the photograph was unequivocal proof of the serious nature of Jauanea's injuries. Where, as here, the proffered photograph is relevant, it is not rendered inadmissible merely because other evidence describes the same subject matter or because a defendant stipulates to some of the issues involved.[19] This is true even if the photograph depicts a gruesome scene. As noted by other courts, "Gruesome crimes produce gruesome, yet probative, photographs."[20] To exclude graphic evidence solely because it is graphic would deprive

15. *See e.g., U.S. v. Carr,* 67 F.3d 171, 175 (8th Cir.1995) (son incarcerated); *U.S. v. Brooks,* 2 F.3d 838, 840 (8th Cir.1993) (relative incarcerated); *State v. Blankenship,* 830 S.W.2d 1, 15 (Mo. banc 1992) (relatives arrested and incarcerated); *State v. Fritz,* 913 S.W.2d 941, 946 (Mo.App. 1996) (family member prosecuted by county).

16. *State v. McGuire,* 892 S.W.2d 381, 384 (Mo. App.1995).

17. *State v. McMillin,* 783 S.W.2d 82, 101 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990).

18. *State v. Feltrop,* 803 S.W.2d 1, 10–11 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991); *McMillin,* 783 S.W.2d at 101; *State v. Murray,* 744 S.W.2d 762, 772 (Mo. banc), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).

19. *Feltrop,* 803 S.W.2d at 10; *State v. Schneider,* 736 S.W.2d 392, 403 (Mo. banc 1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988).

20. *Feltrop,* 803 S.W.2d at 11. *See Murray,* 744 S.W.2d at 772.

the State of evidence when it needs it the most: the evidence would be inadmissible to prosecute what are typically the most serious crimes.

 While photographs should not be admitted if they are solely offered to arouse the emotions of the jury or to prejudice the defendant,[21] the photograph in question here, while moderately graphic, was very probative of how Jauanea looked while in the hospital. No error resulted from its admission. Mr. Johnson argues that the fact the jury asked for and viewed the photograph at one point during its deliberations indicates that its admission unfairly prejudiced him. His argument might have more merit if we had held that the photograph was improperly admitted in the first instance. Here, however, we have held that the photograph was admissible. Mr. Johnson cites no authority for the proposition that the jury's view of a properly admitted photograph is error, and we find none.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

 Finally, Mr. Johnson contends that the motion court should have given him an evidentiary hearing on his allegation that his trial counsel was ineffective in failing to emphasize the inconsistencies between Marcus Drizzle's trial testimony and his earlier statements to the police. We review the motion court's decision regarding ineffective assistance of counsel only to determine whether its findings and conclusions were clearly erroneous. We consider such findings and conclusions clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made.[22]

To prove a claim of ineffective assistance of counsel, the defendant is required to show by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances. Judicial scrutiny of counsel's performance is highly deferential; the defendant must overcome the "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance and trial strategy.[23]

Even if we were to find counsel's conduct deficient, the defendant must also prove that counsel's shortcomings prejudiced him. To prove prejudice the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. We consider the totality of circumstances in determining whether a reasonable probability of a different outcome exists.[24]

 Rule 29.15(g) provides that an evidentiary hearing should be granted if: (1) the movant alleges facts, not conclusions, warranting relief; (2) the allegations are not refuted by the record; and (3) the movant was prejudiced by the alleged errors.[25] The motion court denied Mr. Johnson's motion for an evidentiary hearing because it believed that he could not satisfy either the performance or prejudice prongs of the ineffective assistance test. It concluded that Marcus, a nine-year-old boy, was an appealing witness and that it was a reasonable trial strategy to limit his cross-examination. Where the record reveals that counsel's conduct constituted a reasonable trial strategy, the motion court may deny relief without granting an eviden-

*State v. Wood*, 596 S.W.2d 394, 403 (Mo. banc), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980); *State v. Lay*, 896 S.W.2d 693, 697 (Mo.App.1995).

Rule 29.15(j); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

*Strickland v. Washington*, 466 U.S. 668, 687–89, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674, 693–95 (1984); *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc), *cert. denied*, —— U.S. ——, 115

S.Ct. 371, 130 L.Ed.2d 323 (1994); *Sidebottom v. State*, 781 S.W.2d 791, 795 (Mo. banc 1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990); *Sanders*, 738 S.W.2d at 857.

*Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698; *Sidebottom*, 781 S.W.2d at 796; *Bevly v. State*, 778 S.W.2d 297, 298 (Mo. App.1989).

*State v. Starks*, 856 S.W.2d 334, 336 (Mo. banc 1993); *Fritz*, 913 S.W.2d at 943.

tiary hearing.[26]

While Mr. Johnson argues that a hearing should have been held to determine whether the limited cross-examination was in fact a result of trial strategy, we do not believe that such a hearing would have served any purpose here. The cross-examination is itself in the record. Our review of it reveals that defense counsel's questioning displayed the skill and diligence of a reasonably competent attorney under similar circumstances. Counsel deposed Marcus before trial. At trial he asked Marcus about his statements to the police and summarized what he said to the police. These efforts emphasized the differences between Marcus' trial testimony and his previous statements to police. Regardless of counsel's subjective motivation in not conducting a more aggressive cross-examination, we find that his examination was adequate and, thus, that counsel was not ineffective.

For these reasons, the conviction and denial of post-conviction relief are affirmed.

**All concur.**

---

**26.** *State v. Mays,* 884 S.W.2d 405, 410 (Mo.App. 1994); *Harris,* 870 S.W.2d at 814; *State v. Young,* 844 S.W.2d 541, 548 (Mo.App.1992).